EULALIA BALZAC FARÍA, ET AL., Plaintiffs and Appellees, *v.* PEDRO TORRES LONGORIA ET AL., Defendants and Appellants.

No. 9558. Argued January 16, 1948.—Decided June 22, 1948.

*Enrique Báez García* for appellants. *R. B. Pérez Mercado* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The defendants have appealed to this Court from an adverse judgment and in the lengthy brief filed by them they assigned eight errors claimed to have been committed by the lower court.

In the amended complaint it is alleged that the plaintiffs and defendants respectively own two urban properties situated in Luna Street of the town of San Germán; that although, according to the descriptions of the properties as set forth in their respective titles, they abut upon each other, the fact is that there has existed between both properties, since time immemorial, a sewer or drainage channel, owned by the municipality, which separates them; that prior to the filing

of the complaint and on the boundary line of plaintiffs' lot, adjacent to the sewer, there existed a wooden and zinc fence, and that one day the defendant Luz Lugo went to plaintiffs' house and requested from two of the plaintiffs authorization to destroy the fence and to erect in its stead a concrete fence of the same height; that contrary to the agreement, the defendants erected a wall of such a height that it could be used as a side wall of the garage which the defendants were building within their lot; that when the wall was raised higher than it was authorized, the plaintiffs requested the defendants to refrain from continuing to build the same, and Torres Longoria answered that he would do as he pleased; that said wall has been joined to the main side wall of plaintiffs' house, using in part a wooden wall of said house, all this without plaintiffs' consent or authorization; that, furthermore, the defendants, without any official authorization, have covered with concrete slabs the channel which divides both properties and have used the foundation of plaintiffs' house and the party wall of the latter to support the concrete slabs which cover the said channel; that by reason of said construction a factual confusion as to the boundaries of both properties has been created. They conclude praying that the defendants be adjudged to demolish at their own expense the wall erected within plaintiffs' property as well as the wall which they have joined to the main wall of plaintiffs' house; to restore the wooden and zinc fence to its original condition; and to pay costs and attorney's fees.

The defendants answered and denied the allegations of the complaint. As new matter and as special defense, they set up that they erected the said wall with the express consent of the plaintiffs, having invested therein the sum of $1,260, and that since the wall was built with the consent of the plaintiffs and in their presence, they are only entitled to acquire it by purchase; that they are willing to sell the wall for the above-mentioned amount or to purchase the land occu-

pied by said wall for the sum of $15; that the plaintiffs are barred from requesting the demolition of the structure since they had expressly consented to its erection and witnessed the construction work. By way of cross complaint, they set up an action of denial of servitude and prayed that the plaintiffs be ordered to close the three windows opened in the wall of each of the stories of plaintiffs' house, adjacent to defendants' lot.

At this stage, the case went to trial and the court rendered judgment sustaining the complaint and dismissing the cross complaint, with costs and $500 as attorney's fees. From that judgment, as we have already stated, an appeal has been taken to this Court.

The defendants first contend that the lower court erred in ordering the demolition of the wall. The evidence accorded credit by said court showed that, as alleged in the complaint, two of the plaintiffs, at the request of the defendants, consented to the tearing down by the latter of the wooden and zinc fence built on plaintiffs' lot, adjacent to the drainage channel which separates both properties, provided the defendants substituted it with a concrete fence of the same height; that the defendants did not comply with the agreement and erected at said place, within the lot of the plaintiffs, a wall which in part was higher that that authorized, especially at the rear of the lots, where said wall was erected in such a manner that it served as a side wall of the garage which the defendants constructed within their lot; that as soon as the plaintiffs became aware that the new fence was raised higher than the former fence, they called that fact to the attention of the defendants, but the latter failed to act in accordance with their agreement.

There is no doubt that said fence was constructed within the lot of the plaintiffs.. It was so admitted by the parties. If the defendants had built the fence by strictly complying with their agreement, they would be considered as builders in good faith and would be entitled to the indemnity men-

tioned in § 297 of the Civil Code, 1930 ed.[1] Cf. *Berrocal* v. *Registrar,* 54 P.R.R. 501 and *Figueroa* v. *Rodríguez, ante,* p. 248. However, upon violating the terms of the agreement entered into, the defendants became builders in bad faith, just as if they had not originally held the permit granted to them, without any right to receive any indemnity whatsoever and, *a contrario sensu,* they were bound to demolish the wall erected and to restore everything to its original condition, at their own expense.[2] From an examination we have made of the transcript of the evidence, we are convinced that the lower court was justified in ordering the demolition of the wall. The first error assigned is nonexistent.

▉ The appellants next urge that the lower court erred in not holding that the plaintiffs were subject to estoppel. In discussing the preceding error we have already stated that, as soon as the appellants became aware that the concrete wall exceeded in height the fence which formerly existed, they called the attention of the defendants to that fact and objected to their continuing to erect the wall. We do not think that the alleged estoppel arose. *Rabell* v. *Rodríguez et al.,* 24 P.R.R. 526.

▉ At the trial there was introduced in evidence a certificate issued by the Mayor of the Municipality of San Germán in connection with the sewer or drainage channel situated between the properties of the litigants. The court held that said certificate was not admissible in evidence, denied its admission, and ordered that the certificate remain in the record as evidence offered and rejected. In its opinion,

---

[1] "Section 297.—The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own, the work, sowing or planting, by previously paying the indemnity specified in sections 382 and 383 of this Code, and to oblige the person who has built or planted to pay him the value of the land, and the person who sowed, to pay the corresponding rent."

[2] "Section 299.—The owner of the land on which any one has built, planted or sown in bad faith, may exact the demolition of the work or the removal of the planting or sowing and the replacing of everything in its former condition, at the expense of the person who built, planted or sowed."

however, it reconsidered its prior ruling, admitted in evidence said certificate, and took it into consideration. This clearly was an error of the lower court. Where a document is offered and not admitted in evidence at a trial, the court after the trial has ended has no right to reconsider its ruling and, in the absence of the parties, to take the document into consideration. Such a procedure is not in accord with the due process of law guaranteed by our Organic Act. *Viera* v. *Heirs of Goitía,* 60 P.R.R. 637, 639. However, in view of the form. in which we are deciding this appeal, the error committed does not in the present case carry with it a reversal. We thus dispose of the third error assigned.

The next assignment is to the effect that the District Court of Mayagüez erred in holding that there was an obstructive act. According to § 518 of the Civil Code "Windows with direct views, or balconies or any similar openings projecting over the tenement of a neighbor shall not be made if there is not a distance of two meters between the wall in which they are built and the said property." Moreover, § 520 of the same code prescribes that the provisions of § 518 are not applicable to buildings separated by a public thoroughfare. The plaintiffs contend that they are entitled to a servitude of light and view, that is, to have the six windows existing in the wall of their house next to the drainage channel, which separates their property from that of the defendants, remain open, not only because plaintiffs' house and that of the defendants are separated by a public thoroughfare, but also because they have acquired said servitude by prescription.

Once the defendants introduced evidence tending to show that they had acquired their property free from encumbrances, it was incumbent upon the plaintiffs to introduce evidence to show their right to the servitude. *Ramos* v. *Viejo,* 66 P.R.R. 607, and *Rosado* v. *Municipality,* 59 P.R.R. 736. This was done by them. The servitude of light and view is continuous and apparent and may be acquired by virtue of

a title or by prescription after twenty years. *Román Catholic Church* v. *Combate Tobacco Corp.*, 42 P.R.R. 363. In the latter case the prescriptive period starts to run with the obstructive act, that is, it starts on the day on which the owner of the dominant tenement prohibits, by a formal act, to the owner of the servient tenement the execution of the act which would be legal without the servitude. *Ramos* v. *Viejo, supra, Díaz* v. *Pérez,* 56 P.R.R. 696 and *Díaz* v. *Guerra,* 18 P.R.R. 790. Was evidence disclosing such an obstructive act, as well as the lapse of a 20-year period counted from said act, introduced in this case? The lower court reached that conclusion, and we agree with it. *Joaquín Fajardo,* a witness introduced by the plaintiffs, testified over the objection of the defendants—after the approval of a stipulation to the effect that by public deed executed on December 3, 1924, he acquired from Raúl Antongiorgi a lot in Luna Street of San Germán, bounded on the west by a lot and house of the Heirs of Francisco Balzac—that when he purchased said lot there was no house thereon, and that he had built in January, 1925, the house in which the defendants live at present; that when he was about to construct said house, Don Eustaquio Balzac told him that if he built near them it would prejudice them, and threatened to take him to court, and that, as he had never engaged in litigations, he erected the house further on and left a big space open, through which a truck could pass. *Raúl Antongiorgi* testified in a similar way as Joaquín Fajardo, but his testimony is not, however, so definite and rather tended to show that he and Don Eustaquio had a conversation in friendly terms, that, if he desisted from constructing on the lot which is now occupied by the defendants it was due to the fact that Don Eustaquio requested him not to build near them. The statements of these witnesses regarding their conversation with a predecessor in title of the plaintiffs were admissible in evidence. *Rodríguez* v. *Arocho,* 62 P.R.R. 672, 677, and cases cited therein. The testimony of these witnesses, especially that of Joaquín Fajardo, shows

the obstructive act which gives rise to the prescription in these cases. If said act occurred on December, 1924 and the prescriptive period started to run from said date, it clearly appears that in April, 1946, when the cross complaint for denial of servitude was filed, there had already fully elapsed the 20 years mentioned in § 473 of the Civil Code.[3] This error thus assigned is also nonexistent.

■ The appellants further contend that the district court erred in not holding that they were third persons. This assignment has not been discussed in appellants' brief and could be dismissed on that ground alone. However, we really fail to perceive how the defendants could allege the status of third persons when they acquired their property with full knowledge of the existence of the six windows to which we have already referred. *Roman Catholic Church* v. *Combate Tobacco Corp., supra.*

■ Another assignment is that the lower court erred in stating in its opinion that if this Court should reverse its decision and decide that no public thoroughfare existed between both properties, then it would also dismiss the cross complaint for denial of servitude on the ground of the existence of an obstructive act. Said error has not been committed either. The Rules of Civil Procedure, applicable to ordinary actions like the present one, authorize the demand of alternative relief. Rule 8(a)(d). Since the plaintiffs, in answer to the cross complaint, alleged the existence of a public thoroughfare between the two properties and the acquisition of the servitude of light and view by prescription and introduced evidence to support both defenses, the court was justified in discussing both questions in its opinion and in deciding them in the alternative.

In view of the foregoing considerations, we deem it unnecessary to determine whether the drainage channel existing

---

[3] "Section 473.—Continuous and apparent servitudes are acquired either by virtue of a title or by prescription after twenty years."

between the properties of the litigants was a public thoroughfare, or whether it was an error not to decide anything regarding the survey of appellants' lot.

The judgment appealed from will be affirmed.

Mr. Justice De Jesús did not participate herein.